**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CRIMINAL ACTION NO. 26-234-DLB**

**ABRAHAM CAMPOS ALVAREZ**                                       **PETITIONER**


**v.**                            **MEMORANDUM ORDER**


**MARC FILEDS, et al.**                                          **RESPONDENTS**

* * * * * * * * * * * * * *

This matter is before the Court on Petitioner Abraham Campos Alvarez's Motion for Relief from a Judgment (Doc. # 7).  Respondents have filed a Response in Opposition (Doc. # 12), Alvarez has filed a Reply (Doc. # 13), and this matter is ripe for the Court's review.  For the following reasons, Alvarez's Motion (Doc. # 7) is **denied**.

## I.      PROCEDURAL AND FACTUAL BACKGROUND

Petitioner is a native and citizen of Cuba who first entered the United States without inspection near Eagle Pass, Texas on March 15, 2022.  (Doc. # 1 ¶ 29).  Shortly after his entry into the Untied States, Alvarez was detained by Customs and Border Patrol ("CBP") officials.  (*Id.* ¶ 31).  However, CBP released Alvarez into the United States on March 16, 2022 under an Order of Release on Recognizance pursuant to Section 236 of the Immigration and Nationality Act ("INA"), codified as 8 U.S.C. § 1226.  (*Id.*; Doc. # 1-5 at 2).  After his release, Alvarez remained in the United States continuously until his present detention.  (*Id.* ¶ 29).

On March 9, 2026, Alvarez was arrested for driving under the influence of alcohol and reckless driving.  (*Id.* ¶ 30).  After his arrest, Alvarez was transferred to the custody

1

of Immigration and Customs Enforcement ("ICE").  (*Id.*).  Alvarez remains in ICE custody, and he is presently detained at the Kenton County Jail in Covington, Kentucky.[1]  (*Id.* ¶ 19).

On May 22, 2026, Alvarez filed a Petition for Writ of Habeas Corpus arguing that he was being improperly detained without bond by ICE.  As a remedy, Alvarez requested that this Court order Respondents to "conduct a custody redetermination or release [Alvarez] from custody."  (*Id.* at 26).   On May 26, 2026, the Court ordered Respondents to consider the effect of the Sixth Circuit's decision in *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026) on Alvarez's claims.  (Doc. # 3).  And, to the extent that *Lopez-Campos* resolved Alvarez's claims, the Court ordered Respondents to release Alvarez or, alternatively, provide him with a constitutionally adequate bond hearing within seven days of the Court's Order.  (*Id.* at 2).  On June 1, 2026, Alvarez received a bond hearing pursuant to 8 U.S.C. § 1226 before Immigration Judge ("IJ") Kelly Johnson.  (Doc. # 4-1). IJ Johnson concluded that Alvarez posed a danger to the community and denied bond. (*Id.* at 2).  On June 8, 2026, the Court closed this matter.  (Doc. # 5).

However, on June 18, 2026, Alvarez filed the instant Motion for Relief from Judgment, arguing that *Lopez-Campos* did not resolve his Petition because he "also sought relief on the basis that, as an applicant for adjustment of status pursuant to the Cuban Adjustment Act (the "CAA") who was released by Respondents into the country, he is in a period of lawful presence and entitled to immediate release."  (Doc. # 7 at 3). Alvarez also argues that the bond hearing he received on June 1, 2026 "is a post-

---

[1]     Prior to filing his Petition, Alvarez had not received a custody redetermination hearing.  (*Id.* ¶ 7).   However, Alvarez never requested such a hearing because "[s]cheduling a custody redetermination hearing would have been futile.  The Immigration Judge ("IJ") would have claimed a lack of jurisdiction to determine [Alvarez's] custody status."  (*Id.*).

deprivation remedy that is insufficient to cure the due process violation" he suffered when he was detained under 8 U.S.C. § 1225.  (*Id.* at 5).  On June 22, 2026, the Court reopened this matter for the limited purpose of addressing Alvarez's Motion for Relief.  (Doc. # 8).  On July 22, 2026, Respondents filed a Response in Opposition to Alvarez's Motion.  (Doc. # 12).  Alvarez filed a Reply on that same day.  (Doc. # 13).  Accordingly, this matter is ripe for the Court's review.

## II.    ANALYSIS

Alvarez's Motion advances two arguments.  First, Alvarez asserts that he has been lawfully present in the United States "since his initial humanitarian parole as a non-citizen statutorily eligible to adjust his status pursuant to the Cuban Adjustment Act."  (Doc. # 7 at 3-4).  As a result, he contends that Respondents lack the authority to detain him.  (*Id.*).  Second, Alvarez argues that the due process violation he suffered when Respondents detained him under 8 U.S.C. § 1225 was not adequately remedied by the bond hearing held on June 1, 2026.  (Doc. # 7 at 5).  The Court will address each argument in turn.

### A.    Alvarez is not *Prima Facie* Eligible to Adjust his Status Under the Cuban Adjustment Act

The Cuban Adjustment Act of 1966 affords special treatment to Cuban nationals who come to the United States.  *See* Cuban Adjustment Act, Pub. L. No. 89-732, § 1, 80 Stat. 1161 (1966) (codified as amended as 8 U.S.C. § 1255 note); *United States v. Dominguez*, 661 F.3d 1051, 1067 (11th Cir. 2011).  Under the CAA, "the status of any alien who is a native or citizen of Cuba and who has been inspected and admitted or paroled into the United States . . . and has been physically present in the United States for at least one year, may be adjusted by the Attorney General[.]"  *Id.*  Thus, "Cuban nationals who were admitted or paroled into the United States" may apply "to become

lawful permanent residents after being [in the United States] for more than a year." *Coal. for Humane Immigrant Rts. V. Noem*, 805 F. Supp. 3d 48, 56 (D.D.C. 2025). Importantly, "[b]y taking advantage of the CAA, Cuban nationals, who have no documents authorizing their presence in the United States, can remain in the United States without demonstrating that they suffered persecution or proving refugee status." *Dominguez*, 661 F.3d at 1067. An otherwise eligible individual may seek relief under the CAA by filing a form I-485 application for adjustment of status. *See Concha-Gonzales v. Noem*, No. 1:26-cv-1-CNS, 2026 WL 194178, at *4 (D. Colo. Jan. 26, 2026). Relevant to Alvarez's Petition, courts have held that an applicant for adjustment of status under the CAA may not be subjected to removal proceedings during the pendency of his application.[2] *See id.*, at *3 ("[P]ursuing Petitioner's removal before his I-485 application is adjudicated 'summarily strip[s]' Petitioner of the benefits Congress intended that individuals like him

---

[2]  It is worth noting that Alvarez has not provided any evidence that he has ever filed an I-485 application seeking adjustment under the CAA. And Alvarez cites no authority for his proposition that mere eligibility to apply for adjustment under the CAA—as opposed to a pending application—shields him from removal proceedings. *But see Torres Gonzalez v. Baltazar*, No. 26-cv-01972-RNW, 2026 WL 2056031, at *2 (D. Colo. July 16, 2026) (holding that detention was unlawful where the petitioner "was paroled into the United States" and "*timely applied* for adjustment of status based on the CAA and that application *remains pending*") (emphasis added); *Lopez-Ricardo v. Baltazar*, No. 1:26-cv-01099-SKC, 2026 WL 1773215, at *2 (D. Colo. Apr. 17, 2026) (same); *Concha-Gonzalez*, 2026 WL 194178, at *4 (same).

Perhaps in recognition of this fact, Alvarez attempts to analogize his case to *Alfaro Herrera v. Baltazar*, No. 1:25-cv-04014-CNS, 2026 WL 91470 (D. Colo. Jan. 13, 2026). However, *Alfaro Herrera* involved a Honduran national who received Special Immigrant Juvenile status which shielded him from removal in order to afford him "an opportunity to apply for an adjustment of status." *Id.* at *7 The *Alfaro Herrera* court noted that, due to limited visa availability, the Petitioner had been unable to apply for an adjustment of status. *Id.* at 8. This fact led the court to hold that the petitioner could not be removed until he had had an opportunity to apply for adjustment of status. *Id.* Here, by contrast, Alvarez has not offered any evidence that he ever applied for an adjustment of status or that, like the *Alfaro Herrera* petitioner, he has been unable to do so. Thus, to the extent that Alvarez argues that his mere eligibility to apply for adjustment under the CAA precludes his present detention, the Court disagrees. However, for reasons discussed *infra*, Alvarez is not eligible for relief under the CAA.

receive."); *Torres Gonzalez*, 2026 WL 2056031, at *3; *Succar v. Ashcroft*, 394 F.3d 8, 27 n.25 (1st Cir. 2005).

Alvarez argues that, because he is eligible to apply for an adjustment of status under the CAA, he is "in a period of authorized stay" during which Respondents lack the authority to detain him for removal proceedings. (Doc. # 1 at 18). Thus, he contends that his present detention is unlawful. (*Id.* at 26). Respondents, however, argue that Alvarez "is not *prima facie* eligible to adjust status pursuant to the CAA" because he "did not receive humanitarian parole under INA § 212(d)(5)." (Doc. # 12 at 1). Instead, Alvarez was released on his own recognizance pursuant to INA § 236. (*Id.*; *see also* Doc. # 1-5). As a result, Respondents argue that Alvarez has not been "inspected and admitted or paroled into the United States" in a manner that would make him eligible for an adjustment of status under the CAA. (*Id.*).

The key question, then, is whether release on recognizance via a Form I-220A constitutes "inspection and parole" under the CAA. It does not. Release on recognizance—sometimes referred to as "conditional parole"—is authorized by INA § 236, which is codified as 8 U.S.C. § 1226. In *Matter of Cabrera-Fernandez*, the Board of Immigration Appeals ("BIA") held that Cuban nationals who "were detained soon after their unlawful entry, placed in removal proceedings . . . and released on conditional parole under section 236(a)(2)(B) of the INA" were ineligible to apply for an adjustment of status under the CAA. 28 I. & N. Dec. 747, 749 (BIA 2023). In reaching this conclusion, the BIA observed that only those released on humanitarian parole under 8 U.S.C. § 1182(d)(5)(A) fell within the CAA's ambit. *Id.* at 748. And courts analyzing the CAA have "consistently concluded that noncitizens who were . . . granted humanitarian parole pursuant to §

5

1182(d)(5)(A) are eligible for adjustment of status, while noncitizens granted conditional parole pursuant to § 1226(a) are not." *Hernandez v. Mullin*, No. 25-2344-RBW, 2026 WL 1998803, at *3 (D.D.C. July 10, 2026) (citing *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1119 (9th Cir. 2007); *Cruz-Miguel v. Holder*, 650 F.3d 189, 198 (2d Cir. 2011); *Castillo-Padilla v. U.S. Att'y Gen.*, 417 F. App'x 888, 891 (11th Cir. 2011); *Delgado-Sobalvarro v. Att'y Gen. of U.S.*, 625 F.3d 782, 786 (3d Cir. 2010)).

Because Alvarez was released on his own recognizance via § 1226(a), he was not "inspected and paroled into the United States" as those terms are used in the CAA.  In his Petition, Alvarez insisted that he was "detained under the statutory framework set forth in 8 U.S.C. § 1226(a), which authorizes discretionary release on bond[.]"  (Doc. # 1 at 25). And, after considering the Sixth Circuit's opinion in *Lopez-Campos*, Respondents agreed. (Doc. # 4 at 1 ("Petitioner is detained under § 1226(a)[.]")).  Indeed, on his Notice to Appear for removal proceedings—issued on March 16, 2022—the Department of Homeland Security ("DHS") classifies Alvarez as "an alien present in the United States *who has not been admitted or paroled*."  (Doc. # 1-4 at 2).  On that same day, DHS released Alvarez on an order of release on recognizance in accordance with 8 U.S.C. § 1226.  (Doc. # 1-5 at 2).  Although Alvarez's Motion refers to "his initial humanitarian parole," the record contains no evidence that Alvarez was released on humanitarian parole under 8 U.S.C. § 1182(d)(5)(A).  (Doc. # 7 at 3).  Quite the opposite—Alvarez himself has provided ample documentation to conclude that he was released on his own recognizance.  (*See* Docs. # 1-4 and 1-5).  And, as discussed above, only inspection and admission or release on humanitarian parole under § 1182(d)(5)(A) makes a noncitizen eligible for adjustment of status under the CAA.  *Hernandez*, 2026 WL 1998803, at *3;

6

*Matter of Cabrera-Fernandez*, 28 I. &. N. Dec. at 747.  Because Alvarez has not been inspected and admitted or released on humanitarian parole, he is ineligible for an adjustment of status under the CAA.  Consequently, he was not "in a period of authorized stay" at the time of his detention, and Respondents have lawfully detained him pursuant to § 1226.

> **B.      Alvarez's June 1, 2026 Bond Hearing Adequately Remedied any Due Process Violation He Suffered when Respondents Detained him Under 8 U.S.C. § 1225**

Having concluded that Alvarez's detention is not proscribed by the CAA, the Court turns to the second argument in his Motion.

As a remedy for each of the three counts raised in his Petition, Alvarez sought "a custody redetermination [hearing] or release[.]"  (Doc. # 1 at 25-26).  Accordingly, in light of the Sixth Circuit's decision in *Lopez-Campos v. Raycraft*, this Court directed Respondents to determine "if the present matter must be resolved in Petitioner's favor" and, if so, "immediately release Petitioner or, in the alternative provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a)[.]"  (Doc. # 3).  After considering the impact of *Lopez-Campos*, Respondents determined that Alvarez "is detained under § 1226(a), and he would be entitled to file a motion for custody redetermination with the immigration court."  (Doc. # 4 at 1).  So, in compliance with the Court's Order (Doc. # 3), Alvarez received a bond hearing on June 1, 2026.  (*Id.*).  After considering the evidence presented at the hearing, IJ Kelly Johnson denied bond, finding that Alvarez posed a danger to the community.  (Doc. # 4-1 at 2).

Now, however, Alvarez argues that "[a] bond hearing is a post-deprivation remedy that is insufficient to cure the due process violation."  (Doc. # 7 at 5).  He argues that

7

because Respondents erroneously detained him under 8 U.S.C. § 1225 rather than § 1226, his detention was unlawful.  (*Id.*).  And, despite his requests for a bond hearing in his Petition, Alvarez contends that a custody redetermination hearing cannot cure the constitutional injuries he suffered when Respondents detained him under the wrong statute.  (*Id.* at 5-6).

This Court, and other district courts have rejected the argument that immediate release is the only remedy available upon a determination that § 1226(a), rather than § 1225(b)(2) applies to a noncitizen's detention.  *See, e.g., Pacheco-Acosta v. Olson*, 819 F. Supp. 3d 670, 681-82 (E.D. Ky. 2025); *Evaristo v. Dep't Homeland Sec.*, No. 5:25-cv-215-BJB, 2026 WL 581208, at *10 (W.D. Ky. Mar. 2, 2026) ("So, the Government must, within five days, either release the Petitioner or else provide him with a bond hearing, consistent with § 1226(a) and its implementing regulations."); *Hernandez v. Bondi*, No. 1:25-cv-1680, 2025 WL 3687353, at *9 n.5 (W.D. Mich. Dec. 19, 2025) ("Although Petitioner requests only that the Court order Respondents to immediately release him from custody, this Court has adopted a standard practice of directing that a bond hearing be provided within five business days or, alternatively, that the petitioner be released from custody."); *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 687 (W.D. Tx. 2025) (noting that "the comfortable majority position" in such circumstances "is to [] require a bond hearing before an IJ").  Aside from his argument concerning the CAA, Alvarez does not challenge Respondents' ability to detain him, generally.  Rather, he contends—correctly—that Respondents initially detained him under the wrong statute.  (Doc. # 1 at 25).  Alvarez readily acknowledges that he is actually "detained under the statutory framework set forth in 8 U.S.C. § 1226(a), which authorizes discretionary release on bond and assigns

immigration judges authority to conduct custody redeterminations." (*Id.*).  Thus, Alvarez suffered a procedural due process violation—his rights are not violated by the very fact of his detention.  *Lopez-Arevelo*, 801 F. Supp. 3d at 667.  Instead, they were violated because he was held without a bond hearing in violation of § 1226.  *Id.* at 667-68.  However, as Respondents note, Alvarez has since received such a bond hearing.  (Doc. # 12 at 2; *see also* Doc. # 4).  Consequently, the Court will not order Alvarez's immediate release.

III.    **CONCLUSION**

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)    Alvarez's Motion for Relief from a Judgment (Doc. # 7) is **DENIED**; and

(2)    This matter is hereby **DISMISSED** and **STRICKEN** from the Court's active docket.

This 3rd day of August, 2026.

Signed By:

*David L. Bunning*    *DB*

Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2026\26-234 MOO re Habeas.docx

9